UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

OWNERS INSURANCE COMPANY, )
)
        Plaintiff, )
)   1:09-CV-206
v. )   *Lee*
)
WILLIAM GRAHAM )
and ANNETTE GRAHAM, )
)
        Defendants. )

### **MEMORANDUM AND ORDER**

This is a declaratory judgment action brought by Plaintiff Owners Insurance Company ("Plaintiff") against Defendants William and Annette Graham ("Defendants"). Defendants are the plaintiffs in a state court action against Bill Jennings ("Jennings"), Plaintiff's insured. In the state court action, Defendants allege damages resulting from the construction of their home by Jennings.[1] Plaintiff seeks a declaration that the damages alleged by Defendants are not within the scope of coverage of the insurance policies it issued to Jennings. Plaintiff represents Jennings is not a necessary party to this declaratory judgment action because any liability he may have had to Defendants has been discharged in bankruptcy.

The Court ordered the parties to submit briefs addressing the *Grand Trunk* factors guiding the discretionary exercise of jurisdiction in declaratory judgment actions [Doc. 10]. After considering Plaintiff's brief [Doc. 11], the Court is satisfied that the issues presented in the declaratory judgment action are sufficiently distinct from the issues in the state court action.

---

[1] In the state court action, Defendants have asserted three theories of liability against Jennings: breach of implied warranty of workmanlike quality, negligent construction, and violations of the Tennessee Consumer Protection Act.

Plaintiff's brief explains that "the issues [presented in the declaratory judgment action] are whether the *alleged* defects were caused by work performed by Bill Jennings[2] and whether the *alleged* defects caused damage within the policy term."[3] [Doc. 11 at 3 (emphases added)]. The Court interprets this presentation of the issues to mean that Plaintiff is not challenging the truth of the allegations in the underlying state court action, but is rather arguing that those allegations, even if true, are not within the scope of insurance coverage.

A federal court's exercise of jurisdiction over declaratory judgment actions is discretionary, *see* 28 U.S.C. § 2201 ("in a case of actual controversy within its jurisdiction . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration."), but that discretion is not unbounded. *See Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323 (6th Cir. 1984). In *Grand Trunk*, the Sixth Circuit Court of Appeals laid out a five-factor test to guide the court's discretion:

> (1) whether the declaratory judgment action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Id.* at 326.

Whether the first factor is met hinges on the scope of the controversy presented in the

---

[2] Plaintiff argues that the damages alleged by Plaintiff fall within the "your work" exclusion of the policy.

[3] Plaintiff also argues that the damages alleged by Plaintiff occurred outside the term of coverage.

2

declaratory judgment action. A declaratory judgment will "settle the controversy" when the issues in the declaratory action itself would be finally resolved, notwithstanding the continued existence of a state court controversy between the parties. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 555 (6th Cir. 2008) (holding that where the only issue in the declaratory judgment action was whether the state court defendant was covered by the insurance policy, an issue not before the state court, the declaratory judgment did settle the controversy between the parties). Here, as in *Scottsdale*, it appears that the issues presented in the declaratory action are distinct from those presented in state court. Jennings' liability to Defendants does not depend on whether he or a subcontractor performed the work causing the alleged damages, or on whether the alleged damages occurred during the period of coverage. The declaratory judgment action, therefore, will settle the controversy regarding the scope of coverage once and for all, with no danger that the state court will be called to decide overlapping issues. If Plaintiff is successful, moreover, this declaratory judgment will settle the entire controversy as a practical matter, both in federal and state court, because Jennings' liability to Defendants has been discharged in bankruptcy. Accordingly, I **FIND** the first factor counsels strongly in favor of exercising jurisdiction.

As the *Scottsdale* court noted, "it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Id.* at 557. In order to satisfy this second factor, a declaratory judgment need not clarify all the legal relations implicated in a dispute (e.g., tortious or contractual relationships between the parties to the state court action), but must merely be able to "resolve, once and finally, the question of the insurance indemnity obligation of the insurer." *Id.* The scope of insurance coverage is not at issue in the state court action, and the declaration sought here will definitively resolve the scope of Plaintiff's indemnity obligation without

3

confusing the state court's analysis of Jennings' liability. Furthermore, as noted above, if Plaintiff is successful, there will be no need to clarify the tortious or contractual relationships between Defendants and Jennings, because Jennings' liability has been discharged in bankruptcy. I therefore **FIND** the second factor favors exercising jurisdiction.

The third factor precludes jurisdiction when the declaratory judgment plaintiff files its suit shortly before the state court plaintiff in order to secure a more favorable forum. *Id.* at 558. This factor is presumptively absent when the declaratory judgment action was filed long after the state court action. *See id.* (stating that "[w]e are reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record" and holding that no such motive was evident where the declaratory action was brought "several years" after the institution of the state court action). As in *Scottsdale*, Plaintiff brought its suit long after Defendants filed their state court action, and there is no indication in the record that Plaintiff chose this forum because of an improper motive. I **FIND** the third factor also favors exercising jurisdiction.

The fourth factor, whether the exercise of jurisdiction would increase friction between federal and state courts, involves the consideration of three subfactors. *Id.* at 560. The first, "whether the underlying factual issues are important to an informed resolution of the case," turns on the existence of factual overlap between the state and federal actions. On one hand, if the insurer's indemnity obligation depends on factual determinations being resolved in state court, this subfactor argues against exercising jurisdiction because the federal court may be called upon to make factual determinations that could ultimately conflict with those reached in the state court. *Id.* On the other hand, if the insurer's indemnity obligation can be settled as a matter of law, this subfactor argues for the exercise of jurisdiction. *Id.* Even if the indemnity obligation may be settled

4

as a matter of law, however, the second subfactor, which focuses on "which court . . . is in a better position to resolve the issues in the declaratory action," may nevertheless counsel against exercising jurisdiction if the declaratory judgment action implicates novel issues of state law. *Id.* A "novel issue" of state law does not arise merely because the precise issue has yet to be addressed by the state courts, but only if the law is so undeveloped that the federal court cannot "reasonably predict[]" how a state court would answer the question. *Id.* The third subfactor, "whether there is a close nexus between underlying factual and legal issues and state law and/or public policy," usually militates against exercising jurisdiction in the context of an insurer's indemnity obligation because issues of insurance contract interpretation are questions of state law, and state courts are more familiar with them. *Id.* at 561. Although the state court would likely be better suited to interpreting the insurance contract under state law, this declaratory action does not depend on determinations of fact that may conflict with similar determinations in the state court action, and there appear to be no novel issues of state law. Considering all three subfactors together, therefore, I **FIND** that entertaining this declaratory judgment action would not create friction between the state and federal courts.

The fifth and final factor, whether there is a better alternative remedy, depends on a fact-specific consideration of "the whole package of options" available to the plaintiff. *Id.* at 562. An insurer will typically have at least two alternatives to a federal declaratory judgment action: a state declaratory action and an indemnity action either joined with or filed subsequent to the underlying state action. A state declaratory judgment action might have been a better alternative here because it would have afforded the same advantages to Plaintiff but might have allowed the same judge to hear both the underlying and declaratory judgment actions, sparing judicial resources. Plaintiff

5

argues to the contrary that it did not want to become involved in state court proceedings because of a danger of unfairness or prejudice from mixing issues of liability and insurance coverage. Even assuming a state declaratory judgment action would have been a better alternative, I **FIND** it is not so clearly superior that it outweighs the other four factors, all of which support the exercise of jurisdiction.

At this time, therefore, I **CONCLUDE** the factors announced in *Grand Trunk* counsel in favor of exercising jurisdiction. Accordingly, the Court will exercise its jurisdiction over this matter.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE